IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


SHELLY GRIFFITH,

               Plaintiff,                      Case No. 3:13-cv-00585-HZ

       v.                                    OPINION & ORDER

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

               Defendant.

BRUCE W. BREWER
Law Offices of Bruce W. Brewer, P.C.
P.O. Box 421
West Linn, Oregon 97068
       Attorney for plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

JOHN C. LAMONT
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

FRANCO L. BECIA
Assistant Regional Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
       Attorneys for defendant

1 – OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiff Shelly Griffith brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her application for Social Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). This Court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Ms. Griffith was born on April 14, 1967. Tr. 39, 166, 229. She attended high school through the eleventh grade and later completed her GED. Tr. 39, 239. Ms. Griffith worked previously as a housekeeper and fast-food cashier, although she has been unemployed since 1990. Tr. 233-34, 242.

Ms. Griffith has applied for disability benefits several times, with her last denial occurring on March 5, 2009. Tr. 204, 229-30. On October 9, 2009, Ms. Griffith filed her most recent SSI application, alleging disability as of April 20, 2005, due to type-2 diabetes, hepatitis C, depression, neuropathy, sleep apnea, and lower back pain.[1] Tr. 28, 229, 233-34. After the application was denied initially and upon reconsideration, Ms. Griffith requested a hearing before an administrative law judge ("ALJ"). Tr. 28, 76-89. On December 21, 2011, a hearing was held before ALJ Richard Say, at which Ms. Griffith testified and was represented by counsel; a vocational expert ("VE") also testified. Tr. 28, 50-70. On January 11, 2012, the ALJ issued a decision finding Ms. Griffith not disabled within the meaning of the Act. Tr. 28-41.

---

[1] While neither party addresses this issue, the Court questions whether any of Ms. Griffith's previous filings were based on similar impairments or an overlapping adjudication period, such that the presumption of continuing non-disability is relevant. See Epperson-Nordland v. Colvin, 2013 WL 5774110, *3-4 (D.Or. Oct. 22, 2013) ("res judicata applies to bar reconsideration of prior claims where the Commissioner has previously made a final decision premised on the same facts and on the same issue or issues . . . [but] the presumption of continuing non-disability may be overcome based on changed circumstances") (citations and internal quotations omitted).

2 - OPINION & ORDER

After the Appeals Council denied review of the ALJ's decision, Ms. Griffith filed a complaint in this Court. Tr. 1-4.

## SEQUENTIAL DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The initial burden of establishing disability rests upon the claimant. Id.; Yuckert, 482 U.S. at 146 n.5. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett, 180 F.3d. at 1100.

At step one, the Commissioner determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the Commissioner evaluates if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, she is not disabled. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii).

At step three, the Commissioner resolves whether the severe impairment meets or equals a "listed" impairment in the regulations. If the impairment is determined to equal a listed impairment, the claimant is presumptively disabled. 20 C.F.R. § 416.920(a)(4)(iii).

At step four, the Commissioner considers whether the claimant can still perform "past relevant work." If the claimant can perform such work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv); Yuckert, 482 U.S. at 141. At step five, the burden shifts to the Commissioner to show that the claimant can perform other work existing in the national economy; if the Commissioner cannot meet this burden, the claimant is disabled. 20 C.F.R. §§

3 - OPINION & ORDER

416.920(a)(4)(v), 416.920(f); <u>Tackett</u>, 180 F.3d at 1099.  Conversely, if the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g); <u>Tackett</u>, 180 F.3d at 1099.

## THE ALJ'S DECISION

At step one of the sequential analysis outlined above, the ALJ found that Ms. Griffith had not engaged in substantial gainful activity since October 9, 2009, the SSI application date.  Tr. 30.  At step two, the ALJ determined that Ms. Griffith had the following severe impairments: "depression, obesity, and diabetes mellitus with peripheral neuropathy in her lower extremities consisting of tingling sensation."  <u>Id.</u>  At step three, the ALJ found that Ms. Griffith's impairments, either singly or in combination, did not meet or equal the requirements of a listing. Tr. 32-33.

Because Ms. Griffith did not establish presumptive disability at step three, the ALJ continued to evaluate how her medical impairments affected her ability to work.  The ALJ resolved that Ms. Griffith had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 416.967(a), but with additional limitations:

> [she] can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. She can never crawl or climb ladders, ropes, or scaffolds.  She cannot perform work duties that require fine visual discrimination, night driving, or commercial driving.  She should avoid concentrated exposure to extreme heat and cold, workplace hazards, and chemicals.  She is limited to performing unskilled, routine tasks that involve only superficial interaction with co-workers and the public.

Tr. 33.

At step four, the ALJ found that Ms. Griffith had no past relevant work. Tr. 39.  At step five, the ALJ determined that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national and local economy that Ms. Griffith can perform, such as small products assembler. Tr. 40.  Accordingly, the ALJ concluded that Ms. Griffith was not be disabled under the Act. Tr. 40-41.

4 - OPINION & ORDER

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is "more than a mere scintilla, but less than a preponderance." Bray, 554 F.3d at 1222 (citation and internal quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh the evidence that supports and detracts from the Commissioner's conclusions. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted). Where the evidence can support either a grant or a denial, the court may not substitute its judgment for that of the Commissioner. Id. (citation omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the court cannot affirm the Commissioner's decision upon reasoning the ALJ did not assert in denying the claimant benefits. Bray, 554 F.3d at 1225–26 (citation omitted).

**DISCUSSION**

Ms. Griffith argues that the ALJ erred by: (1) rejecting Michael Griffith's lay witness statements; (2) improperly assessing the medical opinion evidence from Patrice Carrello, Ph.D.; and (3) relying on invalid VE testimony at step five.

**I.    Lay Witness Testimony**

Ms. Griffith asserts that the ALJ neglected to provide a germane reason to reject the testimony of her husband, Mr. Griffith. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation omitted). The ALJ

5 - OPINION & ORDER

must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted). In rejecting lay statements, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis . . . if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id. (citations omitted).

In November 2009, Mr. Griffith completed a "Third Party Adult Function Report." Tr. 250-57. He indicated that he assists Ms. Griffith with getting dressed, showering, and preparing meals. Tr. 250-51. Mr. Griffith also remarked that Ms. Griffith will not take her medications "unless [he] gets them and make[s] her take them." Tr. 252. He stated further that she does not perform any household chores or yard work due to her sugar levels and depression, but he endorsed no limitations with Ms. Griffith's ability to see, talk, hear, or use her hands. Tr. 252-55. As for hobbies and social activities, Mr. Griffith indicated that Ms. Griffith plays computer games, and sends emails and calls her children at his prompting. Tr. 254. Additionally, he explained that Ms. Griffith can only pay attention for 20 to 30 minutes at a time and gets scared easily. Tr. 254-56.

The ALJ found that "Mr. Griffith's statement[s] [are] generally credible but of limited value, when viewed against the longitudinal record." Tr. 39. In so finding, the ALJ recognized that "Mr. Griffith's observations are generally consistent with [Ms. Griffith's] allegations." Id. The ALJ resolved, however, that "even if one accepts these observations as completely true, they do not describe symptoms or limitations so severe so as to preclude [Ms. Griffith] from working at jobs consistent with the [RFC]." Id. To the extent the ALJ discredited Mr. Griffith's testimony, it was due to the fact that "objective medical evidence does not support the degree of limitation described in [his] statements." Id.

6 - OPINION & ORDER

As such, the ALJ did not wholly reject the lay testimony. Further, contrary to Ms. Griffith's assertion, inconsistency with or lack of corroboration by the medical record is a germane reason to discredit third-party statements. Compare Pl.'s Opening Br. 10-11 (citing Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009); Smolen v. Chater, 80 F.2d 1273, 1289 (9th Cir. 1996)), with Glover v. Astrue, 835 F.Supp.2d 1003, 1012-14 (D.Or. 2011) ("the basis for the holdings in Smolen and Bruce that an ALJ may not reject lay testimony for being unsupported or uncorroborated by the medical evidence, is no longer in effect") (citations omitted); see also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence") (citation omitted). In this case, substantial evidence supports the ALJ's conclusion that objective medical evidence contravenes Mr. Griffith's statements concerning the extent of Ms. Griffith's impairments. See, e.g., Tr. 94-103, 349-54, 456-58, 539-45, 709-14, 759-74 (Utako Sekiya, M.D., Ryan Vancura, M.D., Robert Wolf, M.D., Gregory Cole, Ph.D., Licensed Social Worker Lee Monoham, Ronald Glaus, Ph.D., Gory Maughan, D.O., opining that Ms. Griffith's physical and mental impairments are, at most, moderate).[2] Thus, the ALJ's decision is upheld as to the lay witness testimony.

## II.   Medical Opinion Evidence

Ms. Griffith next argues that the ALJ impermissibly rejected the opinion of Dr. Carrello. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In

---

[2] Although not determinative, the Court also notes that Ms. Griffith reported engaging in activities to her medical providers that were far greater than those endorsed in either her or her husband's testimony. See, e.g., Tr. 664 (Ms. Griffith reporting in December 2010 that "[s]he had been walking a lot until [getting] sick the last 2 weeks"), 677 (Ms. Griffith reporting in June 2011 that she had fallen off a stool while hanging laundry on a clothesline), 943 (treatment record from January 2011 reflecting that Ms. Griffith was "on her phone continuously, as well as her computer"); see also Tr. 766 (Ms. Griffith rating her average daily depression, in October 2011, as a 6 "on a scale from 1 to 10 where 1 would represent being very distraught and 10 would represent being very happy").

7 - OPINION & ORDER

considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

  In November 2008, Ms. Griffith attended a one-time psychological evaluation with Dr. Carrello. Tr. 342-48. Pursuant to this evaluation, Dr. Carrello "reviewed the records provided by DDS" and interviewed and examined Ms. Griffith. Id. Dr. Carrello noted that Ms. Griffith's "symptoms have been somewhat responsive to various medication treatments." Tr. 347. The doctor diagnosed Ms. Griffith with "Major Depressive Disorder, moderate, with mood congruent psychotic features" and "Methamphetamine Dependence, in full sustained remission," and assigned her a GAF score of 55, "which is indicative of 'moderate limitations.'" Parsons v. Colvin, 2013 WL 5310265, *5 (D.Or. Sept. 19, 2013) (quoting Bollinger v. Barnhart, 178 Fed.App'x 745, 746 n.2 (9th Cir. 2006)); Tr. 346-47. Regarding functional limitations, Dr. Carrello opined that Ms. Griffith is able to "perform simple and repetitive tasks," "accep[t] instructions from supervisors," and interact appropriately with coworkers and the public, but may not be able "to perform work activities on a consistent basis without special or additional instruction," "complete a normal workday/work week without interruptions from her psychiatric condition," or "maintain regular attendance in the workplace at this moment, as she reports that she spends all her day in bed." Tr. 347-48.

  The ALJ afforded "partial weight" to Dr. Carrello's report. Tr. 38. Namely, the ALJ found that the functional limitations identified by Dr. Carrello "generally support[ed] the [RFC]

8 - OPINION & ORDER

found in this decision." Id. However, the ALJ rejected the doctor's opinion that Ms. Griffith "could not maintain employment at this time" because that limitation was based in Ms. Griffith's un-credible self-reports. Id. The ALJ also denoted that "Dr. Carrello's report includes [Ms. Griffith's] admission that she was currently not taking her Abilify as prescribed, and Dr. Carrello identified prior treatment records that showed [Ms. Griffith's] symptoms responding to medication." Id.

An ALJ need not accept a medical opinion that is based on the claimant's discredited statements. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[a]n opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted"); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, with the exception her restriction relating to maintained employment, the ALJ credited the concrete limitations identified by Dr. Carrello and incorporated them into the RFC.[3] Tr. 33 (Ms. Griffith "is limited to performing unskilled, routine tasks that involve only superficial interaction with co-workers and the public"). The ALJ also summarized and weighed several other medical opinions regarding Ms. Griffith's mental functioning, including those from Dr. Glaus, Dr. Cole, Dr. Sekiya, and Nurse Practitioner Lori Nelson, as well as State-agency consultants Dorothy Andersen, Ph.D., and Megan Nicoloff, Psy.D., most of whom opined that Ms. Griffith would be

---

[3] Dr. Carrello's statements that Ms. Griffith may have difficulty completing work without interference from her mental impairments or performing work activities on a consistent basis without additional instructions do not represent "work-related limitation[s] of function that nee[d] to be reflected in the RFC." Boyer v. Colvin, 2013 WL 3333060, *7-8 (D.Or. July 1, 2013) (citing SSR 96–8p, available at 1996 WL 374184); see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999) (ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity"). In any event, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

capable of sustaining employment if limited to simple, routine tasks and occasional public/coworker contact. Tr. 33-39; see also Tr. 94-110, 539-62, 580, 759-68. Ms. Griffith does not now challenge the weight afforded to these sources. See generally Pl.'s Opening Br.; Pl.'s Reply Br.

In sum, in formulating Ms. Griffith's RFC, the ALJ accepted Dr. Carrello's opinion to the extent it was consistent with the other medical evidence of record and not based solely on Ms. Griffith's discredited self-reports. Because the record does not contain any evidence evincing that Ms. Griffith sought or obtained regular mental health treatment, the aforementioned reports from examining or consulting sources formed the basis of the ALJ's decision. While variable interpretations of this medical evidence may exist, the ALJ's analysis was nonetheless reasonable and therefore must be affirmed. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004) (court must uphold an ALJ's rational interpretation of the evidence). Accordingly, the ALJ's assessment of Dr. Carrello's opinion is affirmed.[4]

### III. Step Five Finding

Lastly, Ms. Griffith contends that the ALJ erred at step five by relying: (1) "on a single job, that of small products assembler," which the VE stated was a "possibility," as opposed to "likely or probable"; and (2) "upon VE testimony which diverged from the DOT without explanation" Pl.'s Opening Br. 5-7; see also Pl.'s Reply Br. 1-2. Regarding the latter allegation

---

[4] The parties' briefing focuses on whether the ALJ erred in determining that Ms. Griffith's non-compliance with treatment, which she allegedly could not afford, undermined Dr. Carrello's conclusions. See Tr. 38; Pl.'s Opening Br. 8-9; Def.'s Resp. Br. 8-11. For the reasons discussed above, however, the Court finds it unnecessary to resolve this issue. Nevertheless, while not dispositive, courts within the Ninth Circuit have upheld an ALJ's consideration of poor compliance with treatment, albeit in the context of a credibility determination, where the claimant lacked insurance or financial means but did not seek out low- or no-cost options. See Keokham v. Astrue, 2008 WL 4196972, *6-7 (E.D.Cal. Sept. 9, 2008); Klahn v. Astrue, 2012 WL 993399, *10 (D.Ariz. Mar. 23, 2012) (citations omitted).

of error, Ms. Griffith asserts that, "in response to a (modified) sedentary RFC, the VE diverged from the DOT when he identified a DOT-designated light job"; this discrepancy is harmful because "light work requires 'a good deal of standing – the primary difference between sedentary and most light jobs.'" Pl.'s Opening Br. 7 (quoting SSR 83-10, available at 1983 WL 31251).

At the hearing, the VE testified that, based on her age, education, work experience, and RFC, Ms. Griffith could perform work as a small products assembler, DOT § 739.687-030, of which there are 33,000 jobs regionally and over two million jobs nationally. Tr. 66-68. Specifically, in response the ALJ's dispositive hypothetical, the VE remarked that "[o]ne possibility might be in the production/assembly kind of thing, small products assembly." Tr. 67. The VE explained further that these positions "are exertionally light, because of speed, but they allow for sitting, and that's why I would use this one." Id. The VE thereafter confirmed that his testimony concerning the representative occupation was consistent with the Dictionary of Occupational Titles ("DOT"). Id.

On cross-examination, Ms. Griffith's counsel's asked whether the total number of jobs classified were for small products assembler only or "for some larger job" that could be broken down into more discrete positions. Tr. 67-68. The VE replied that the number of jobs he cited represented a cluster of "jobs within the national economy that have characteristics exactly the same – same exertion level, same – you know, same skill level – so on, so on, so on, so on"; there was only one other DOT code within the cluster of small products assembler, but that cluster could not be "broken out any place" more distinctly. Tr. 68-69. In his decision, the ALJ discussed the VE's testimony and noted the name, incidence, and DOT code of the position identified by the VE in finding Ms. Griffith not disabled at step five. Tr. 40.

11 - OPINION & ORDER

A.   Adequacy of Vocational Expert's Testimony Concerning the Identified Job

The Commissioner can meet its step five burden by either applying the Medical Vocational Guidelines or taking the testimony of a VE. Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010), cert. denied, 131 S.Ct. 2882 (2011) (citation and internal quotations omitted). "Where, as here, the ALJ relies on the testimony of a VE in making his step five finding, the issue is whether a significant number of jobs, as opposed to discrete occupations, have been identified." Cruise v. Astrue, 2012 WL 5037257, *10 (D.Or. Sept. 28), adopted by 2012 WL 4966462 (D.Or. Oct. 17, 2012) (citing 20 C.F.R. §§ 416.960(c), 416.966; SSR 83-14, available at 1983 WL 31254). "Between 1,000 and 1,500 jobs in the regional economy constitutes a significant number for purposes of the SSA." Id. (citing Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989)).

Initially, contrary to Ms. Griffith's contention, the VE's testimony was not "speculative" concerning the position of small products assembler. Pl.'s Opening Br. 5. Rather, the VE identified this position as a "possibility" in the sense that it was one example of a job that Ms. Griffith could perform despite her limitations. Tr. 67. The VE's subsequent testimony, that he "[d]id not see anything else . . . that would fit with this particular hypothetical," lends further support to the fact that this representative occupation fits within the ALJ's dispositive hypothetical. Id. Therefore, Ms. Griffith's attempt to take this word out of context and imbue it with a different meaning does not change the fact that the ALJ's interpretation of the VE's testimony was rational. See Andrews, 53 F.3d at 1039 ("ALJ is responsible for . . . resolving ambiguities [and the ALJ's decision must be upheld] where the evidence is susceptible to more than one rational interpretation").

12 - OPINION & ORDER

Moreover, to the extent that Ms. Griffith asserts that the ALJ's step five finding was erroneous because "[t]he record is silent in regard to . . . how many of the jobs with the 739.687-030 designation are actually in existence," her argument is not persuasive. Pl.'s Opening Br. 6. The VE expressly stated that the vocational cluster for DOT § 739.687-030 – which was comprised of only two jobs: small products assembler and one other job with "characteristics exactly the same" – consisted of 33,000 positions regionally and over two million positions nationally. Tr. 67-68. The ALJ reasonably interpreted the VE's testimony to indicate that Ms. Griffith could perform all of the jobs within this DOT cluster because they were consistent with her RFC. Tr. 40; Batson, 359 F.3d at 1198. In other words, the ALJ did not err in concluding that a significant number of jobs existed in the national and local economy that Ms. Griffith could perform despite her impairments. See Cruise, 2012 WL 5037257 at *10; see also Beltran v. Astrue, 700 F.3d 386, 389-91 (9th Cir. 2012) (collecting cases). The ALJ's decision is therefore affirmed as to this issue.

### B. Inconsistency with the Dictionary of Occupational Titles

The DOT is presumptively authoritative regarding job classifications, but that presumption is rebuttable. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Id. Thus, before he may rely on the VE's testimony, an ALJ "must first determine whether a conflict exists." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). In accordance with Social Security Ruling 00–4p, the ALJ must ask the VE if her testimony is consistent with the DOT. Id. at 1152–53. The failure to so inquire is a procedural error. Such an error is harmless if there is no conflict between the VE's testimony and the DOT, "or if the vocational expert had provided sufficient support for her

conclusion so as to justify any potential conflicts." Id. at 1153-54; see also SSR 00–4p, available at 2000 WL 1898704.

The ALJ complied with that duty here. As a preliminary matter, no discord exists between the VE's testimony and the DOT regarding Ms. Griffith's ability to stand and/or walk, which is the sole basis of her challenge pertaining to this issue. See generally Pl.'s Opening Br.; Pl.'s Reply Br.; see also Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994) (court only considers those "issues which are argued specifically and distinctly in a party's opening brief"). As discussed above, based on the dispositive hypothetical question posed by the ALJ, the VE identified a representative occupation, existing in significant numbers in the national and local economy, that Ms. Griffith could perform despite her limitations. Tr. 66-69. This hypothetical was complete in that it was based on Ms. Griffith's age, education, work experience, and exertional and non-exertional limitations, and Ms. Griffith does not raise any allegations of error associated with the dispositive hypothetical presented to the VE. Compare Tr. 33 (Ms. Griffith's RFC), with Tr. 66-67 (ALJ's dispositive hypothetical question presented to the VE); see generally Pl.'s Opening Br.; Pl.'s Reply Br. In addition, the ALJ explicitly asked the VE whether his testimony regarding the job of small products assembler was "consistent with the [DOT,]" and the VE replied that it was. Tr. 40, 67.

However, the VE acknowledged that the small products assembler job is generally categorized as light exertion work, but explained that this position "allow[ed] for sitting" and was not sedentary only "because of speed." Tr. 67; see also DOT § 739.687-030, available at 1991 WL 680180 ("[e]ven though the weight lifted may be only a negligible amount, a job should be rated Light Work" when it requires: (1) "walking or standing to a significant degree"; (2) "pushing and/or pulling of arm or leg controls"; and/or (3) "working at a production rate pace entailing the constant pushing and/or pulling of materials"). In other words, this representative

14 - OPINION & ORDER

occupation is classified as light because it necessitates working at a certain production rate pace, even though it does not impose standing and/or walking requirements that are incompatible with Ms. Griffith's RFC.[5]  Tr. 67.

Accordingly, per the VE's testimony, the standing and walking requirements of the small products assembler position are, in fact, consistent with sedentary exertion work.  Nevertheless, to the extent that the VE's testimony can reasonably be construed as identifying a conflict with the DOT regarding Ms. Griffith's standing/walking limitation, this inconsistency was adequately resolved. Even though the DOT listed the position of small products assembler as exertionally light – i.e. requiring standing and walking up to six hours per eight-hour workday – the VE accounted for this discrepancy by explaining that, as it was actually performed, this job was consistent with Ms. Griffith's sedentary RFC.  Tr. 67; see also Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986) (per curiam) ("[t]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed").  While the ALJ did not explicitly discuss the VE's testimony, he implicitly accepted the VE's reasonable explanation by resolving step five against Ms. Griffith. Tr. 40.

---

[5] Ms. Griffith did not provide argument or evidence concerning her ability to perform the pacing or production requirements of the small products assembly position, despite the fact that the Commissioner expressly raised this issue in its opposition.  See generally Pl.'s Opening Br.; Pl.'s Reply Br.; see also Def.'s Resp. Br. 6-7. Instead, Ms. Griffith responded that "'[s]peed,' with no further specification, does not mean that a worker with a sedentary RFC can perform a light level job."  Pl.'s Reply Br. 2.  The Court disagrees.  The ALJ reasonably interpreted the VE's statement that the representative occupation was "exertionally light, because of speed" as a reference to that position's "production rate pace."  Tr. 40, 67; DOT § 739.687-030, available at 1991 WL 680180; see also Batson, 359 F.3d at 1198.  In fact, Ms. Griffith does not proffer an alternative interpretation, reasonable or otherwise, of what "speed" could mean in this context. See generally Pl.'s Opening Br.; Pl.'s Reply Br.; see also McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (as amended) ("[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm").

15 - OPINION & ORDER

In sum, the VE considered the ALJ's hypothetical question and, relying on his vocational expertise, concluded that Ms. Griffith could work as a small products assembler. Because the evidence establishes that the ALJ incorporated all of Ms. Griffith's limitations into the hypothetical posed to the VE, the ALJ's reliance on the VE's testimony was appropriate and supported by substantial evidence. See, e.g., Alsup v. Astrue, 2012 WL 3817795, *7-9 (D.Or. Sept. 4, 2012) (affirming the ALJ's step five finding where the VE explained that the claimant could perform representative occupations identified as light, despite an RFC that limited him to standing and/or walking two hours per day, because those jobs were defined as such due to their production pace and there was no indication that the claimant was limited in that category); Finkenbinder v. Comm'r of Soc. Sec., 2013 WL 4828941, *5 (D.Or. Sept. 9, 2013) (affirming the ALJ's step five finding because, although the claimant pointed to alleged inconsistencies with the DOT, "the ALJ provided the VE with a hypothetical incorporating all of Plaintiff's limitations"); see also Wentz v. Comm'r Soc. Sec. Admin., 401 Fed.Appx. 189, 191 (9th Cir. 2010). As such, the ALJ's step five finding is upheld.

## CONCLUSION

The Commissioner's decision is AFFIRMED because it was supported by substantial evidence in the record and based on the correct legal standards. This action is DISMISSED.

IT IS SO ORDERED.

DATED this 30 day of March, 2014.

/s/ Marco Hernandez
Marco A. Hernandez
United States District Judge

16 - OPINION & ORDER